UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERBERT DEWEY BALDRIDGE,

               Petitioner,              Case No. 2:21-cv-12059
                                              Hon. Gershwin A. Drain

v.

SHERMAN CAMPBELL,

               Respondent.

_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF
HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY,
AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Herbert Dewey Baldridge ("Petitioner") filed this habeas case under 28 U.S.C.

§ 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of

second-degree murder. MICH. COMP. LAWS § 750.317. He was sentenced as a

second-time habitual felony offender to a term of 300-to-600 months' imprisonment.

The habeas petition raises eight claims: (1) the trial court erred in failing to

direct a verdict in Petitioner's favor, (2) the trial court erred in failing to instruct the

jury on voluntary manslaughter, (3) the trial court incorrectly scored the sentencing

guidelines, (4) Petitioner was erroneously bound over for trial on a charge of first-

degree murder, (5) Petitioner's right to present a defense was violated when he was

prevented from offering evidence of the victim's prior acts of violence against

Petitioner, (6) defense counsel was ineffective for failing to seek a more favorable plea offer, (7) the trial court failed to adequately consider the advisory sentencing guidelines, and (8) the trial court erred in correcting Petitioner's judgment of sentence on its own motion.

The Court will deny the petition because the claims are without merit. The Court will also deny a certificate of appealability and deny leave to appeal in forma pauperis.

## I. Background

The Michigan Court of Appeals summarized the facts of the case:

> This appeal arises from the death of Jamiall Jameson following an altercation at Liberty Liquor Store I in Detroit, Michigan, on June 1, 2013. Billy Baldridge, (Baldridge) defendant's cousin, testified that on June 1, 2013, he, defendant, and two other individuals, known as "Derrell" and "Little Lamont," drove to the liquor store to buy cigarettes and liquor. According to Baldridge, he walked into the liquor store first and saw the victim. Defendant and Derrell entered the store behind Baldridge. When Baldridge turned around, defendant and the victim were fighting and Baldridge jumped in and threw punches. Based on a surveillance video of the altercation, Baldridge agreed that it appeared that defendant delivered the first punch. Baldridge testified that the pair continued to throw punches at the victim until the store owner said that he was going to call the police, precipitating Baldridge and defendant to leave the store. Baldridge testified that he and defendant went in different directions following the altercation with the victim.

> Latif Danyal, the owner of the liquor store, testified that he was working in the store with his cashier on the evening of June 1, 2013. Although he did not personally witness the altercation, he found a piece of a knife, approximately 4 inches long, on the floor. Not knowing that

2

the knife had anything to do with the altercation, he picked it up and threw it away so no one would step on it.

Following a call from central dispatch at approximately 10:00 p.m., Officer McLean of the Detroit Police Department and his partner searched vacant lots for approximately 10 minutes before they found the victim who was yelling and raising his hand. The victim had multiple head wounds and his white T-shirt was completely covered in blood. It appeared to McLean that the victim had stab wounds to his stomach. Emergency Medical Services arrived and took the victim to the hospital where he later died, the autopsy revealing that the victim had three stab wounds—the fatal wound to his left chest that penetrated the right ventricle of his heart, one to his right upper abdomen that penetrated his liver, and one in the middle of his abdomen. The coroner ruled the cause of death homicide.

Police officers began to retrace the victim's steps leading them eventually back to the party store where the altercation occurred. There they found a knife blade and knife handle in the dumpster at the party store. The knife had a 4-inch wooden handle and a 4-inch blade. Forensic evidence revealed that there were at least three donors of DNA on the knife handle, however police were unable to make any conclusions regarding the source of the DNA. As to the knife blade, forensic examiners testified that the victim's DNA matched the blood on the knife blade.

After the prosecution rested its case, defendant moved for a directed verdict, arguing in pertinent part that with regard to the first-degree murder charge, there was no evidence of premeditation or deliberation. Defendant argued that the incident took place in a heat of passion, and no planning was involved. The prosecution argued that the best evidence of premeditation was the video, which showed that defendant immediately attacked the victim when he entered the store and that the victim was holding only a plastic bottle and a bag. The prosecution also argued that a rational trier of fact could find that the attack was planned based on the video and the evidence of a dispute between defendant and the victim. The trial court denied the motion, finding that it was for the jury to decide whether there was sufficient evidence of premeditation and deliberation.

Following denial of his motion for a directed verdict, defendant testified on his own behalf. During his testimony it was revealed that defendant had left the state following the altercation to help support his girlfriend and child. He was apprehended on [] July 31, 2015 in Arlington Texas and was transported back to Michigan.

At trial, defendant testified that he did not know that the victim was at the store and he was not carrying a knife. However, as defendant approached the door, he saw the victim and it appeared that he had something in his hand. Defendant stated he was scared because the victim, in August 2012 had previously punched defendant, causing him to receive 10 stitches in his chin. According to defendant, after punching defendant the victim left in his car, drove at people in the street, then ran into a tree, got out of his car, started running, and shot at defendant and others with a gun. On a subsequent occasion, the victim had a gun and, upon seeing defendant, said, "I got a beef with him, I'm going to get rid of him."

When the victim raised his hand in the liquor store, defendant saw the item in his hand shining and believed it was a gun. Fearing for his safety, defendant testified he tried to knock the item out of the victim's hand and they started fighting. Defendant had recently had a traumatic brain injury and a brain tumor, so he feared receiving a blow to his head. During the struggle, defendant grabbed something from the victim's hand and swung, however defendant testified that he did not know that it was a knife and he could not recall stabbing the victim.

During trial, defendant requested that the trial court give M Crim JI 16.9, which is "Voluntary Manslaughter as a Lesser Included Offense of Murder." The prosecution objected, arguing that there was no evidence of provocation because the victim made no gesture or threatening movement. Defendant argued that he believed the victim raised his hand and that there was something in the victim's hand. Defendant added that the video showed that the stabbing occurred during the fight when there was no time for blood to cool. The trial court denied defendant's request to give the instruction and the jury found defendant guilty of the lesser-included offense of second-degree murder.

On May 16, 2016, defendant's sentencing hearing was held wherein the prosecution argued that Offense Variable (OV) 5, psychological injury to a member of the victim's family, should be scored at 15 points based on the testimony of the victim's mother. Defendant argued that OV 5 was correctly scored at 0 points because there was no evidence of any psychological injury. The trial court found that the victim's mother was very tearful on the stand and had to listen to the call to the 911 operator. The trial court scored OV 5 at 15 points, bringing defendant's total OV score to 105 points, which placed him in the C–III cell of the sentencing grid for Class M2 offenses. See, MCL 777.61. His minimum sentence guidelines range, as a second-offense habitual offender, was 225 to 468 months or life. The trial court sentenced defendant to 300 to 600 months' imprisonment and this appeal ensued.

*People v. Baldridge*, No. 333435, 2017 WL 4938385, at *1-2 (Mich. Ct. App. Oct. 31, 2017).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised three claims:

I. Did the trial court err in denying Mr. Baldridge's motion for a directed verdict with regard to first degree premeditated murder?

II. Did the trial court commit reversible error by failing to properly instruct the jury with regard to voluntary manslaughter?

III. Did the trial court err with regard to the scoring of OV 5 in violation of the US and Michigan Constitutions?

Petitioner also filed a pro se supplemental brief in the Michigan Court of Appeals that raised an additional three claims:

I. District court magistrate abused its discretion in binding defendant over on a charge of first-degree premeditated murder, where there was no evidence of premeditation and deliberation.

II. The trial court abused its discretion when it misapplied the law by failing to allow evidence of the victim's reputation and acts of violence specifically against the defendant, thereby depriving defendant of his constitutional right to present evidence in support of his theory of his defense.

III. Mr. Baldridge was provided ineffective assistance of counsel where during the plea proceeding his attorney failed to negotiate a more favorable plea offer at the behest of both the trial court and the prosecutor, where Mr. Baldridge stated on the record that he would have accepted a more favorable plea offer.

The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished opinion. *Id.* The court agreed with the third claim raised in counsel's brief, and it remanded the case to the trial court to make findings of fact relevant to the scoring of the challenged offense variable. *Id.*, \*10.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the claims rejected by the Michigan Court of Appeals. The application was denied by standard form order. *People v. Baldridge*, 910 N.W.2d 273 (Mich. 2018)(Table).

On remand, the trial court made findings of fact to support the original scoring of the guidelines, and it ruled that "the original sentence of 300 to 600 months imprisonment will remain." (ECF No. 9-9, PageID.366.)

Petitioner filed another claim of appeal, raising two claims in the Michigan Court of Appeals related to the remand hearing:

> I. Even though the sentencing guidelines are advisory, they are a factor the trial court must consider at the time of sentencing, the trial court judge's failure to do so in this case requires resentencing.

> II. The trial court judge erred in this case by correcting Defendant-Appellant Herbert Dewey Baldridge's invalid sentence on its own initiative absent a motion from one of the parties.

The Michigan Court of Appeals affirmed. *People v. Baldridge*, No. 348590, 2020 WL 1231731 at *1, 6 (Mich. Ct. App. March 12, 2020). Petitioner appealed to the Michigan Supreme Court, but his application for leave to appeal was again denied by standard form order. *People v. Baldridge*, 949 N.W. 2d 703 (Mich. 2020)(Table).

## II. Standard of Review

Title 28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must generally demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

A. Sufficiency of the Evidence

Petitioner's first claim asserts that the trial court erred in failing to direct a verdict on the charge of first-degree murder. He argues that improperly allowing the jury to consider the first-degree murder charge might have resulted in a "compromise verdict" of second-degree murder. The claim is without merit because it cannot be supported by clearly established Supreme Court law.

"'[C]learly-established Supreme Court law provides only that a defendant has a right not to be convicted except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that submission of a charge

upon which there is insufficient evidence violates a defendant's constitutional rights where the defendant is acquitted of that charge.'" *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*, 347 F. Supp.2d 448, 453 (E.D. Mich. 2004)); *see also King v. Trippett*, 27 F. App'x. 506, 510 (6th Cir. 2001)(Habeas petitioner who alleged that the trial court improperly refused to enter a directed verdict on his armed robbery charge, even though the jury subsequently acquitted him on that charge, failed to state a claim sufficient for habeas corpus relief). Alternatively, the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *See Daniels v. Burke*, 83 F. 3d 760, 765, fn. 4 (6th Cir. 1996).

Because Petitioner was acquitted of the first-degree murder charge, he fails to show that submission of that charge to the jury violated a constitutional right clearly established by Supreme Court law. Petitioner therefore fails to demonstrate entitlement to relief under § 2254(d).

B. Voluntary Manslaughter Instruction

Petitioner's second claim asserts that the trial court erred in failing to instruct the jury on the lesser offense of voluntary manslaughter. This claim, too, is not cognizable because it cannot be supported by clearly established federal law.

The Supreme Court has expressly declined to determine whether due process requires jury instructions on lesser included offenses in non-capital cases. *See Beck*

*v. Alabama*, 447 U.S. 625, 638 n. 14 (1980). Such a right was found to exist in capital cases. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982). The Sixth Circuit has interpreted *Beck* to mean that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir.2001)(citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir.1990)(en banc)); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Tegeler v. Renico*, 253 F. App'x 521, 524-25 (6th Cir. 2007)(due process did not require jury instruction on lesser-included offense of voluntary manslaughter in first-degree premeditated murder case where petitioner received a non-parolable life sentence). Consequently, an involuntary manslaughter instruction was not constitutionally required in Petitioner's case. Petitioner thus fails to state a claim upon which habeas relief may be granted under § 2254(d).

C.  Sentencing Guidelines

Petitioner's third claim argues that the trial court incorrectly scored an offense variable of the sentencing guidelines. This argument does not raise a federal constitutional issue.

It is important to note at the outset that Petitioner was sentenced under the advisory version of Michigan's sentencing guidelines. Thus, no Sixth Amendment issue is implicated by the scoring of the offense variables. *See United States v. Booker*, 543 U.S. 220, 232 (2005).

Petitioner asserts that the trial court erroneously assessed points for psychological harm caused to the victim's mother. The trial court found the victim's mother's testimony supporting the scored of the offense variable. (Tr. 2/25/19, at 10-11.) A challenge to a state court's interpretation of its own sentencing guidelines is not cognizable on federal habeas review. *Whitfield v. Martin*, 157 F. Supp. 758, 762 (E.D. Mich. 2001)("[P]etitioner's claim involving allegedly improper interpretation of the state's sentencing guidelines is not a cognizable claim for federal habeas review."); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999)(claim state trial court incorrectly scored offense variable does not allege a violation of federal constitution such that habeas relief is available.). Petitioner's claim that the victim's mother's testimony did not support the scored offense variable on the sentencing guidelines does not raise a federal issue. The claim is therefore without merit.

## D. Bind Over for Trial

Petitioner's fourth claim challenges the evidence presented at his preliminary examination to sustain his bind over for trial. This claim also raises only a non-cognizable state-law issue.

There is no federal constitutional right to a preliminary examination. *See Gerstein v. Pugh*, 420 U.S. 103, 123, 125 n. 26 (1975); *Dillard v. Bomar*, 342 F. 2d 789, 790 (6th Cir. 1965). An attack on the sufficiency of the evidence to support a

bind-over decision following a preliminary examination, therefore, does not implicate any constitutional right. *See Dorchy v. Jones*, 320 F. Supp. 2d 564, 578 (E.D. Mich. 2004); *Redmond v. Worthington*, 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012). The claim is not cognizable.

## E. Right to Present a Defense

Petitioner's fifth claim asserts his right to present a defense was violated when he was prevented from offering testimony concerning the victim's reputation for violence and prior acts of violence against Petitioner.

The Michigan Court of Appeals found that Petitioner's constitutional claim was unpreserved because defense counsel only objected to the trial court's ruling on state-law evidentiary grounds, and it went on to find that the evidentiary error was harmless:

> Defendant also argues that the trial court abused its discretion by refusing to allow him to present witness testimony regarding the victim's specific instances of violence, thereby depriving him of his constitutional right to present a defense.

> "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v. Aldrich*, 246 Mich. App. 101, 113, 631 N.W.2d 67 (2001). At trial, defendant attempted to call Tomika Knight to testify regarding specific instances of violence by the victim in order to show defendant's state of mind, but the trial court precluded the testimony. Thus, defendant's evidentiary challenge is preserved. Defendant did not, however, argue that he was denied the constitutional right to present a defense. Therefore, his constitutional claim is unpreserved.

***

During trial, the prosecution filed a motion to preclude defendant from calling witnesses to testify regarding specific acts of the victim under MRE 404(a)(2) and MRE 405(b). Defendant intended to present the testimony of Knight, who would testify regarding an act of violence by the victim in order to show defendant's state of mind and show that the victim was dangerous. According to defense counsel, Knight would have testified that the victim struck defendant, got into his car and drove toward defendant, and then fired shots from a pistol. The prosecution argued that a witness could testify regarding reputation and opinion, but only defendant could testify regarding specific instances of conduct. The trial court would not allow the testimony about the incident unless it came from defendant himself.

Defendant argues that the victim's specific instances of violence should have been admitted to show his reasonable apprehension of harm. To the extent that defendant sought to show his state of mind, or his reasonable apprehension of harm, the evidence was admissible. *Harris*, 458 Mich. at 319, 583 N.W.2d 680. Accordingly, the trial court abused its discretion by refusing to admit the evidence for this purpose. *Bass*, 317 Mich. App. at 255, 893 N.W.2d 140.

Having found that the trial court in not admitting the testimony, we next turn to whether the error requires reversal. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v. Lukity*, 460 Mich. 484, 496, 596 N.W.2d 607 (1999) (citation and quotation marks omitted). In this case, defendant testified on his own behalf at trial and described the exact acts of violence about which Knight would have testified. As previously stated, defendant testified that in August 2012, the victim punched him, causing him to receive 10 stitches in his chin. He testified that the victim then attempted to hit people with his vehicle, and then fired shots at defendant and others with a gun. Defendant also testified regarding additional acts of violence, including that he saw the victim with a gun on a subsequent occasion, and upon seeing defendant, the victim said, "I got a beef with him, I'm going to get rid of him." Defendant further testified that he had seen the victim with a gun on at least seven occasions. Given

defendant's testimony regarding the victim's acts of violence, we cannot ascertain how the trial court's refusal to allow Knight's testimony affected the outcome of the trial. The complained of testimony was admitted, albeit by the defendant rather than Knight, however the jury heard all of the testimony that Knight would have given. Thus, reversal is not warranted. For the same reason, the trial court's refusal to allow defendant to call Knight in support of his defense did not affect defendant's substantial rights. *See Bosca*, 310 Mich. App. at 47, 871 N.W.2d 307.

*Baldridge*, 2017 WL 4938385 at *7-9.

Respondent asserts that review of the federal claim is procedurally defaulted. The procedural default doctrine "precludes federal courts from reviewing claims that a state court has declined to address, because of a petitioner's noncompliance with a state procedural requirement." *Howard v. Bouchard*, 405 F.3d 459, 475 (6th Cir.2005). A claim is barred from review if: (1) "there is a state procedural rule that is applicable to the petitioner's claim and ... the petitioner failed to comply with the rule," (2) the state court "actually enforced the state procedural sanction," and (3) "the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Scott v. Mitchell*, 209 F.3d 854, 863-64 (6th Cir.2000)(citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir.1986)).

Here, Petitioner failed to comply with a firmly established and adequate state procedural rule that requires a defendant to specifically and contemporaneously object to alleged trial errors on constitutional grounds to preserve a claim for

appellate review. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *People v. Brown*, 811 N.W.2d 531, 535-36 (Mich. Ct. App. 2011). The Michigan Court of Appeals enforced that rule by finding that Petitioner's constitutional right to present a defense claim was not preserved. *Baldridge*, 2017 WL 4938385 at *7. The fact that the court went on to analyze the preserved state evidentiary aspect of the claim does not eliminate the default. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

A federal court will review a state prisoner's procedurally defaulted federal claim if the prisoner shows "cause" for the default and "prejudice" from the error, or if a manifest miscarriage of justice would otherwise result. *See Coleman*, 501 U.S.at 749-50. The only conceivable candidate for cause to excuse the default in this case would be an argument that Petitioner's trial counsel was ineffective for failing to object to the alleged error on constitutional grounds in addition to evidentiary grounds. However, when a petitioner claims ineffective assistance of counsel as cause for a procedural default, the allegation of ineffectiveness is a separate claim which must itself be exhausted in state court. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 478, 489 (1986). According to *Edwards*, the failure to exhaust the ineffectiveness claim will itself constitute a procedural default of the cause argument and prevents a federal court from hearing it. 529 U.S. at 452. Petitioner never exhausted a claim that his trial counsel was ineffective for

failing to object on constitutional grounds, and therefore he is barred from raising that claim to excuse his default.

Finally, the narrow exception for fundamental miscarriage of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004); *Schlup v. Delo*, 513 U.S. 298 (1995). Petitioner has not presented any claim or evidence of actual innocence.

In addition to the claim being defaulted, the state court also reasonable found that any error was harmless. On habeas review, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)(quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 411 (6th Cir. 2009). In addition, a state court's harmlessness decision is itself entitled to deference. *Davis v. Ayala*, 576 U.S. 257, 269 (2015). A habeas court may not grant relief unless the state court's "harmlessness determination itself was unreasonable." *Id.* (cleaned up).

Here, it was not objectively unreasonable for the state court to determine that any error was harmless where Petitioner provided more specific and detailed testimony regarding the victim's prior assaultive conduct than what he asserted the defense witness would have testified to. Petitioner testified in his own defense that

on a prior occasion the victim punched him in the jaw. (Tr. 4/25/16, at 48-49.) The victim then drove his vehicle "down the street trying to hit everybody" including Petitioner's "little nieces and nephews[.]" (*Id*. at 49.) He then "smashed into a tree, jumped out, and ran a few steps down the street and turned and shot at [Petitioner and others]." (*Id*. at 51.) Unlike the proffered testimony from the defense witness, Petitioner also testified about an incident where the victim brandished a gun and told Petitioner that he had "beef with him," and that he was "going to get rid of him[.]" (*Id*. at 50.)

Another feature of the suppressed defense evidence is that apart from providing a predicate for a defense, it also provided a revenge motive for Petitioner's actions. A reasonable argument can be made that the victim shooting at Petitioner on a prior occasion—and thus establishing preexisting serious animosity—was as harmful to the defense as it was helpful. This, taken together with the other strong evidence offered by the prosecution of Petitioner's guilt, including the fact that no weapon was found on the victim, prevents Petitioner from demonstrating that the exclusion of the testimony had a substantial impact on the result of his trial. The decision by the state court that the error was harmless was not objectively unreasonable.

F. Ineffective Assistance of Counsel

Petitioner argues in his sixth claim that his trial counsel was ineffective for failing to seek a more favorable plea deal than the one offered by the trial prosecutor. This claim was rejected by the Court of Appeals on the merits:

> Defendant claims that his attorney failed to advise him regarding the risks of proceeding to trial, including the sentence that he was likely to receive after a conviction at trial. There is no evidence on the record, however, regarding defense counsel's discussions with defendant. Therefore, defendant fails to establish the factual predicate for his claim. *See Jackson*, 313 Mich. App. at 432, 884 N.W.2d 297. Moreover, defendant does not argue, let alone establish, that there is a reasonable probability that he would have accepted any plea that was offered. *See Douglas*, 496 Mich. at 592, 852 N.W.2d 587. Rather, he argues that he would have accepted a more reasonable offer and that his attorney failed to seek and negotiate a better plea than the one that was offered.
>
> At the final conference on January 26, 2016, defense counsel stated that he had talked to the prosecutor, who offered to allow defendant to plead guilty to second-degree murder and receive a minimum sentence at the bottom of the guidelines range, which was 22 1/2 to 37 1/2 years. Defendant indicated that he was not interested in the offer. At an evidentiary hearing on February 12, 2016, the prosecutor stated that the offer was for a plea to second-degree murder and a sentence within the guidelines range. The prosecutor stated that the offer would be open until the pretrial conference on February 22, 2016. At the pretrial conference on February 22, 2016, defense counsel stated that defendant was not interested in the offer for "the bottom end of the guidelines on a second [degree] murder case." The prosecutor stated that defense counsel was free to "have further negotiations upstairs." The trial court stated that it had given defendant more time to negotiate, but defense counsel stated that he had not yet gone to the superior's office at the prosecutor's office. At a second pretrial conference on April 5, 2016, defense counsel stated that the prosecutor was not coming down from 22 years. The prosecutor stated:

My understanding is that's the offer so far. I don't have any other indication that says that counsel has spoken to anybody about a possible reduction to that. However, I don't know if that's possible at this point to reduce it too much further. But I always welcome counsel to speak to people that can make a decision on that.

The prosecutor stated that the person who could make such a decision was his supervisor. The prosecutor stated his understanding that the original offer was no longer available because the final conference had passed, and it was up to defense counsel to seek a new offer from the prosecutor's supervisor. Defense counsel stated that he would call the supervisor and defendant stated that he wanted him to do so.

Defendant is incorrect in his conclusory argument that the parties agreed that defense counsel's performance was deficient as our review of the record fails to establish that defense counsel failed to attend any "pre-arranged appointments." It is true that the trial court and prosecutor encouraged defense counsel to contact the prosecutor's supervisor to seek a better offer and that defense counsel had not yet done so on April 5, 2016. But there is no indication in the record regarding whether defense counsel subsequently had contact with the prosecutor's supervisor.

Although an agreement was apparently never reached, defendant has not shown that his counsel did not contact the supervisor. Without any record evidence of counsel's actions, or inactions, defendant fails to establish the factual predicate for his claim. *See Jackson*, 313 Mich. App. at 432, 884 N.W.2d 297. Even if defense counsel's failure to contact the supervisor further in advance of trial was unreasonable, defendant still fails to establish that a better offer would have been made by the supervisor. Defendant asks this Court to remand for a *Ginther* hearing, but he fails to support his request with an affidavit or other offer of proof regarding the facts to be established at the hearing. MCR 7.211(C)(1). Therefore, remand is not warranted.

*Baldridge*, 2017 WL 4938385 at *9-10 (footnotes omitted).

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel, and that right extends to the plea-bargaining process. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984); *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). When evaluating counsel's performance under *Strickland's* first prong, the reviewing court must apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The Sixth Circuit has provided further guidance for reviewing counsel's performance when a defendant challenges his attorney's conduct during plea bargaining. Although "[t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer ... the attorney has a clear obligation to fully inform [his or] her client of the available options." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003); *Miller v. Straub*, 299 F.3d 570, 580 (6th Cir. 2002).

*Strickland's* prejudice prong requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of a deficient advice regarding a plea, to establish prejudice a defendant must show a reasonable probability that, but for the deficient representation, he

would have accepted the prosecution's plea offer. *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

Here, the state appellate court reasonable determined that Petitioner proffered insufficient evidence to establish either prong of the *Strickland* test. The Court focuses on the first prong. There is no indication in the record that defense counsel failed to seek a better plea offer than the one Petitioner rejected. The record indicates that the trial prosecutor offered a plea to second-degree murder with a sentence agreement of a minimum term of twenty-two and a half years. (Tr 2/26/16, at 3-4.) Petitioner rejected that offer at two pretrial hearings. (*Id*. at 4-5; Tr. 2/22/16, at 3.) The prosecutor suggested that if Petitioner was desirous of a better offer, it would require "further negotiations upstairs[.]" (Tr. 2/22/16, at 4; Tr. 4/5/16, at 4.) But at no point in any of the pretrial proceedings did the prosecutor suggest that a better offer would in fact be made, and the record does not indicate that defense counsel failed to seek one.

If anything, the record of the final pretrial conference shows that defense counsel indicated he would contact the prosecutor's supervisor to seek a more favorable offer:

> [Trial Prosecutor]: If there's a new offer that's willing to be extended by [the supervisor] at this time I am not aware of it. But that would be up to counsel to seek that.
>
> The Court: All right, are you going to do that?

[Defense Counsel]: Yes, your Honor.

The Court: Do you want him to do that?

[Petitioner]: Yeah.

The Court: All right.

[Defense Counsel]: I'll give [the supervisor] a call.

(Tr. 4/5/16, at 5.)

The record is silent after that. Petitioner proffered no evidence to the state courts, nor does he proffer any to this court, that counsel never contacted the trial prosecutor's supervisor.[1] This case is distinguishable from a case like *Byrd v. Skipper*, 940 F.3d 248, 259-60 (6th Cir. 2019), where the Sixth Circuit confronted a "uniquely cut-and-dried" situation when the trial prosecutor testified at a hearing that he would have made a more favorable plea offer had defense counsel requested one.

"[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U. S. 12, 23 (2013)(internal quotation marks and brackets omitted); *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021). The state court here reasonably presumed under *Srickland's* deferential standard that defense counsel

---

[1] Furthermore, because the state court denied the claim on the merits, this Court is barred from expanding the record here beyond that which was considered by the state courts. *See Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011).

performed adequately during plea negotiations and attempted to obtain a favorable plea deal. In the absence of evidence to the contrary, the state court's rejection of Petitioner's claim did not result in an objectively unreasonable application of the clearly established standard.

## G. Failure to Consider Guidelines

In his seventh claim, Petitioner argues that the trial court on remand from the Court of Appeals failed to adequately consider the advisory guidelines before reimposing the original sentence. This claim is without merit for the same reason Petitioner's second claim is without merit. It challenges the trial court's application of advisory sentencing guidelines under state law. *Cook*, 56 F. Supp. 2d at 797.

## H. Correction of Judgment of Sentence

Petitioner's final claim asserts it was error for the trial court to correct an error in the judgment of sentence on its own motion. It appears that following the resentencing hearing, the trial court amended the judgment of sentence to reflect that Petitioner was sentenced as a habitual offender. The correction merely reflected what occurred at the sentencing hearing, during which Petitioner's habitual offender status was established. (Tr. 5/16/16, at 12.) Petitioner fails to cite any case establishing a federal constitutional right prohibiting the trial court from making such a correction on its own motion.

Because Petitioner has not demonstrated entitlement to habeas relief with respect to any of his claims, the petition will be denied.

## IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). Here, jurists of reason would not debate the Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they are devoid of merit. Therefore, a certificate of appealability is denied.

Petitioner is denied permission to appeal in forma pauperis because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 2) **DENIES** a certificate of appealability, and 3) **DENIES** permission to appeal in forma pauperis.

**IT IS SO ORDERED**.


/s/ Gershwin Drain_____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  November 22, 2022


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 22, 2022, by electronic and/or ordinary mail.
/s/ Kelly Winslow for Teresa McGovern
Case Manager